UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

ROBYN J. HINTON,                    )
                                    )
                    Plaintiff,      )       Case No. 1:09-cv-1021
                                    )
v.                                  )       Honorable Robert Holmes Bell
                                    )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )       **REPORT AND RECOMMENDATION**
                    Defendant.      )
_____)


        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff was not

entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits.  On

April 25, 2006, plaintiff filed her applications for benefits alleging a February 24, 2003 onset of

disability[1].  (A.R. 178-80, 184-86).  Plaintiff's claims for benefits were denied on initial review.

(A.R. 118-25).  On October 21, 2008 (A.R. 36-102), plaintiff received a hearing before an

administrative law judge (ALJ), at which she was represented by counsel.  On April 1, 2009, the ALJ

issued a decision finding that plaintiff was not disabled.  (A.R. 8-18).  On September 17, 2009, the

---

[1]Administrative *res judicata* stemming from the denial of plaintiff's earlier applications for
DIB and SSI benefits barred any claim of an onset of disability on or before July 30, 2005.  (A.R.
8, 107-16).  Further, SSI benefits are not awarded retroactively for months prior to the application
for benefits.  20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir.
2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The
earliest month in which SSI benefits are payable is the month after the application for SSI benefits
is filed.  Thus, May 2006 is plaintiff's earliest possible entitlement to SSI benefits.

Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On November 6, 2009, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

> THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING TO PROPERLY CONSIDER RELEVANT MEDICAL EVIDENCE AND BY SUBSTITUTING HIS OWN JUDGMENT FOR THAT OF THE CLAIMANT'S TREATING AND EXAMINING DOCTORS.
>
> A.  THE ALJ DEMONSTRATED A BIAS THAT EFFECTIVELY DENIED PLAINTIFF AN IMPARTIAL CONSIDERATION OF THE EVIDENCE.
>
> B.  THE ALJ IMPROPERLY REJECTED TESTIMONY OF THE CLAIMANT AND HER MOTHER BASED ON CREDIBILITY WITHOUT SUFFICIENT EXPLANATION.
>
> C.  THE ALJ IMPROPERLY SUBSTITUTED HIS JUDGMENT FOR THAT OF THE TREATING AND EXAMINING MEDICAL PROFESSIONALS.

(Statement of Errors, Plf. Brief at 10, 13, 14, docket # 9). Upon review, I recommend that plaintiff's request that this matter be remanded to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g) be denied. I further recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

# Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from July 30, 2005, through the date of the ALJ's decision. The ALJ found that it was not necessary to determine at step 1 of the sequential analysis whether the work plaintiff had performed during her claimed period of disability rose to the level of substantial gainful activity. (A.R. 10-11). Plaintiff had the following severe impairments: "right hand nerve damage, depression and post-traumatic stress disorder." (A.R. 11). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 12). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that since July 30, 2005, the day after the issuance of the prior Administrative Law Judge's decision, the claimant has the residual functional capacity to perform a limited range of light work (20 C.F.R. 404.1567(b) and 416.967(b)). She can lift 20 pounds occasionally and lift/carry 10 pounds frequently; stand/walk for about 6 hours and sit for about 2 hours per eight-hour workday, with normal breaks; occasionally handle objects (that is, gross manipulation) with the right upper extremity; avoiding concentrated exposure to vibration and irritants such as fumes, odors, dust, and gasses; in work limited to simple, routine, and repetitive tasks.

(A.R. 13-14). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 14-16). Plaintiff was not capable of performing her past relevant work. (A.R. 17). Plaintiff was 31 years old on July 30, 2005, her earliest possible onset of disability, and she remained classified as a younger individual at all times relevant to her claims for DIB and SSI benefits. (A.R. 16). She has a limited education and is able to communicate in English. (A.R. 16). The ALJ found that the transferability of job skills was not material to a determination of disability. (A.R. 17). The ALJ then turned to the testimony of a vocational expert (VE). In response to a

hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were more than 10,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 93-95). The ALJ held that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 8-18).

## 1.

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ was biased[2]. (Plf. Brief at 10-13). The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming this presumption rests on the party asserting bias, who must rebut the presumption by showing a conflict of interest or some other specific reason for disqualification." *McCrea v. Astrue*, No. 3:09-cv-68, 2010 WL 235141, at *10 (N.D. Fla. Jan. 15, 2010). Additionally,

_____

[2]Plaintiff did not assert that the ALJ was biased until after the ALJ denied her claims for DIB and SSI benefits. She never utilized the available administrative procedure for seeking an ALJ's disqualification. *See* 20 C.F.R. §§ 404.940, 416.1440. The regulations require that the issue of bias be raised at the earliest opportunity. *See Johnson v. Commissioner*, No. 09-11881, 2010 WL 1949638, at * 8 (E.D. Mich. Apr. 19, 2010). Plaintiff's attorney did not object to any of the statements now offered as evidence of the ALJ's bias.

This court is encountering an increasing number of boilerplate arguments in social security cases accusing the ALJ of bias against the plaintiff or his attorney. Accusing an ALJ of bias is a very serious charge. It should not be made on a routine basis. The party claiming bias faces a very high evidentiary burden. Thus, litigants claiming that an ALJ was biased are seldom successful. *See, e.g.*, *Johnson v. Commissioner*, 2010 WL 1949638, at * 8; *Martin v. Astrue*, No. 1:08-cv-46, 2009 WL 187716, at * 5-6 (N.D. Ind. Jan. 26, 2009).

the party must come forward with convincing evidence that "a risk of actual bias or prejudgment" is present. *Collier*, 108 F. App'x at 364; *see Schweiker*, 456 U.S. at 195-96; *Navistar*, 921 F.2d at 1360. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, No. 09- 6328, 2010 WL5439794, at * 6 (6th Cir. Dec. 30, 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

The hearing transcript undermines plaintiff's claim that the ALJ was biased. The ALJ was extremely patient with plaintiff, even when she offered patently evasive testimony regarding her use of illegal drugs:[3]

Q      Marijuana. Still smoking marijuana?

---

[3]The record is replete with references to plaintiff's marijuana and alcohol abuse. (*See, e.g.*, A.R. 280-81, 284, 286, 300, 307, 410, 457, 466, 468, 477, 498, 500, 535, 544, 594). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004); *Snead v. Barnhart*, 360 F.3d 834, 835 (8th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to her disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether her drug and alcohol abuse were material to a finding of disability.

A       Not really?

Q       What's that mean?

A       That means no, but –

Q       That really means yes.  Are you smoking marijuana now?

A       I'll say no more than yes.  So we're going to say no.

Q       You ever heard of being partway pregnant?

A       I didn't inhale, no.  I'll say no.  It's been awhile.  And I felt – when I was younger,

        I'm really glad that I did, because I could've been a serial killer.  I used to – I was

        thinking about how my mind used to work then.  I used to think about just waking

        up in the middle of the night, killing everybody in my house, and that was [at] 7, 8.

        I started smoking marijuana at 7, 8 years old.  And –

Q       When was the last time you smoked marijuana?

A       About two months ago.

Q       Okay.  How'd you pay for it?

A       It was with somebody else.

Q       They paid for it?

A       Yes.  I cannot afford it.  And if I could, I still wouldn't spend my money on it . . . .

(A.R. 62-63).

        The ALJ's question that plaintiff characterizes as "mean spirited" is set forth in

context below.

        BY ATTORNEY:

Q       Now you said that you sometimes forget to take your medication?

-7-

A       Um-hum.

Q       Do you also forget other things in your life?

A       I forget everything. And the simple things I forget. I might cook something. I forget that I'm cooking. Every time I cook it's burnt. Honest to God, every time I cook something, I burn it because I can't stand to watch it. And then when I sit down, I forget I'm cooking. I forget to make sure my daughter['s] clothes [are] ironed, [and] her hair [is] done in the morning. I forget conferences. I haven't been to my son['s] conferences since he [has] been in high school, and he graduate[s] this year.

Q       Because you forget?

A       Yes. I forgot I even applied for the re-appeal for disability.

BY THE ADMINISTRATIVE LAW JUDGE:

Q       Why?

A       I just forg[o]t it. I didn't even realize that I was still in – on the thing. I was on my way going to apply again until the lady called and said I had an appointment, a hearing date. I forgot you sent me paperwork. I looked at it. I even opened it. And I just forgot to – I looked at it every day and just didn't fill it out. Okay, I'll do it. Okay, I'll do it. It just don't never [sic] get done. Nothing gets done with me.

Q       Why not?

A       My mind is not functioning right for me to understand.

Q       *Can you name anything that you've taken responsibility for in your life?*

A       *No. I mean, I'm responsible for the way my kids [are] turning out. I'm – yeah, I'm responsible for how my life is right now, but I can't do nothing [sic] about it.*

(A.R. 83-84, emphasis added). It was the ALJ's job to ask the claimant-witness difficult questions and ultimately determine the credibility of her testimony claiming that her mental impairments caused extreme functional limitations. Assuming the ALJ accepted plaintiff's description of her inability to perform even routine tasks of life, the ALJ was charged with making the crucial

determination whether this inability stemmed from a physical or mental medical condition, on the one hand, or plaintiff's irresponsibility, on the other. The ALJ was not bound to accept plaintiff's characterization uncritically -- judging her credibility in light of all the evidence was central to the ALJ's adjudicative role. Even if the ALJ had been discourteous, demeaning, and skeptical, that would not provide a basis for overturning the ALJ's decision. *See Collier*, 108 F. App'x at 364 ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing.").

The ALJ's opinion does not provide evidence that the ALJ was biased. It was appropriate for the ALJ to note the lack of objective evidence supporting plaintiff's claims. Mental health records that are "merely a regurgitation of the patient's own subjective history" (A.R. 15) are of limited utility, because it is the ALJ's job to determine the claimant's credibility. *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Opinions based on the claimant's reporting of her symptoms are not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 569 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Plaintiff's argument that the ALJ was biased because his opinion "minimize[d] the severity" of her 2009 hospitalization (Plf. Brief at 12-13) cannot withstand scrutiny. Plaintiff did not have a history of inpatient hospitalization before January 27, 2009. (A.R. 710). The ALJ's observation that plaintiff was hospitalized in 2009 after a "suicidal gesture" (A.R. 15) is entirely consistent with the medical record. (A.R. 710). "Suicidal gesture" is common parlance for an

individual's threat or attempt to kill herself. *See e.g, Collier v. Commissioner*, 108 F. App'x at 359; *Page v. Astrue*, 5:09-cv-115, 2010 WL 65009, at * 2 (W.D. Ky. Jan. 5, 2010). Plaintiff's condition improved with medication and treatment. She was discharged from the hospital on February 2, 2009. (A.R. 704-21). I find no evidence that the ALJ was biased against plaintiff, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

## 2.

Plaintiff argues that the ALJ "improperly rejected testimony of the claimant and her mother based on credibility without sufficient explanation." (Plf. Brief at 13). It is the ALJ's function to determine the credibility of the witnesses. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d at 920. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Payne v. Commissioner*, No. 08-4706, 2010 WL 4810212, at * 3-4 (6th Cir. Nov. 18, 2010). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference

particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. Here, the ALJ's opinion summarized plaintiff's medical history (A.R. 11-16). He specifically mentioned Social Security Ruling 96-7p (A.R. 14), and offered the following summary of plaintiff's testimony regarding her metal impairments:

> Claimant alleges that due to her mental condition she has never been able to function or maintain a job for any length of time or care for herself and her family without her mother's help (Exhibit B3E/12)[A.R. 237]. She testified that while she can dress herself and attend to her other personal needs, she cannot bathe herself because of her high blood pressure. She also stated because of her mental condition she has difficulty leaving her house. [A.R. 50-51, 80].

(A.R. 14). The ALJ observed that no treating or examining medical source had limited plaintiff's work activities. (A.R. 15). He noted that James W. Setchfield, M.D., reported that plaintiff had "no history or physical findings that would prohibit full activities." (A.R. 15, 721). Plaintiff was able to perform physical activities like riding her moped. (A.R. 12, 568). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ's finding that plaintiff's symptoms are controlled when she takes her medication is supported by more than substantial evidence:

> Claimant's symptoms are controlled when she takes her medications as prescribed. In July 2006, she admitted that although she was prescribed Neurontin, hydrochlorothiazide (HCTZ), Norvasc, Depakote, and Adderall, she did not actually take them (Exhibit B3F/3)[A.R. ]. Physicians with Cherry Street Health Services cautioned her to take her medication regularly (Exhibit B13F/2)[A.R 349]. She admits that she feels much better and her mood stabilizes with medication (Exhibit B13F/5) [A.R. 352].

(A.R. 15). The ALJ's credibility determination is supported by more than substantial evidence, and his opinion easily satisfies the requirement that the ALJ explain his credibility determination. *See Infantado v. Astrue*, 263 F. App'x 469, 475-76 (6th Cir. 2008).

Plaintiff's related argument that the ALJ improperly rejected her mother's testimony requires little discussion. Barbara Palmer, plaintiff's mother, did not testify. Plaintiff and the VE were the only witnesses who testified during plaintiff's administrative hearing.

On August 16, 2006, Ms. Palmer wrote a statement in support of her daughter's applications for DIB and SSI benefits:

> I feel that Robyn is extremely manic, bipolar. She had repeatedly exhibited bizarre behavior and constant dysfunctional acts in caring for herself and for her kids. She should have been on SSI the past 15 years. She can flip and change in a heartbeat. Her children are in counseling because of her. Her crazy behavior is truly bad for them.

-12-

(A.R. 249). The ALJ was not required to discuss or give any weight to this statement. Ms. Palmer is not an acceptable medical source. Her diagnosis of her daughter's medical condition and opinion regarding plaintiff's entitlement to SSI and DIB benefits were not entitled to any weight. The ALJ rejected Ms. Palmer's statement regarding plaintiff's level of functional restriction because it was inconsistent with the record as a whole. (A.R. 15). I find no error.

**3.**

Plaintiff argues that the ALJ "improperly substituted his judgment for that of the treating and examining medical professionals" because the ALJ "ignored" the results of a July 2006 consultative examination. (Plf. Brief at 14-15). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Commissioner*, No. 09-4071, 2010 WL 3199693, at * 3 (6th Cir. Aug. 12, 2010). An ALJ does not "ignore" or "disregard" medical opinions when he finds that they are not persuasive. *See Carrelli*, 390 F. App'x at 437. Here, the ALJ expressly considered the results of the July 2006 consultative examination conducted by Neil Reily, M.A., a limited license psychologist:

> In July 2006, a consultative psychologist concluded that claimant suffered from bipolar I and was predominantly depressed. Claimant's snapshot Global Assessment of Functioning (GAF) was scored at 49 (Exhibit B3F)[A.R. 298-303]. Although subsequent reports disclose less gravity in claimant's overall mental functioning, the record establishes that claimant continued to have depression as well as suffering from post-traumatic stress disorder (Exhibits B16F, B18F, B26F)[A.R. 414-22, 451-79, 704-21].

(A.R. 11). Psychologist Reily did not perform any objective tests supporting his conclusions. He wrote, "She says that she was diagnosed with bipolar disorder but has had other doctors tell her it was just depression." (A.R. 298). The majority of the psychologist's report is devoted to recording

plaintiff's statements (A.R. 298-300). The ALJ found that these "regurgitations" of plaintiff's subjective statements were entitled to little weight. (A.R. 15).

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, 330 F. App'x 563, 567 (6th Cir. 2009). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see Price v. Commissioner*, 342 F. App'x 172, 177-78 (6th Cir. 2009). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Smith v. Commissioner*, 482 F.3d at 877; *Young v. Secretary of Health & Human Servs.*, 925 F.2d at 151.

The ALJ found that plaintiff retained the RFC for a range of light work "limited to simple, routine and repetitive tasks." (A.R. 14). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact made by the ALJ on the record as a whole, not a determination made by a treating or examining physician. *Coldiron v. Commissioner*, 2010 WL 3199693, at * 3.

The ALJ was not required to give any weight to the low GAF score supplied by Psychologist Reily. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."

*White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009).  A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.  It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood.  A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276.  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7.  The Diagnostic and Statistical Manual of Mental Disorders' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."  *Kornecky*, 167 F. App'x at 511.  Plaintiff's arguments that the ALJ improperly substituted his judgment of that of treating or examining medical professionals do not provide a basis for disturbing the Commissioner's decision.

**4.**

Plaintiff argues that the ALJ committed error when he failed to find that her sarcoidosis[4] was a severe impairment and "seem[ed] to minimize" the results of her March 2009 pulmonary function test:

> As for Plaintiffs' physical symptoms, the ALJ also seems to minimize those as well by substituting his own judgment. In a report prepared in March 2009, a pulmonary specialist determined that the Plaintiff has sarcoidosis for which treatment is necessary. (T 722). Her oxygen saturation rate was low (94%) on room air and her chest x-rays were abnormal. (T 722). Notwithstanding this report, the ALJ concludes that Plaintiff's sarcoidosis does not constitute a severe impairment.

(Plf. Brief at 15-16). The finding of serious impairments at step 2 is a threshold determination. The finding of a single serious impairment is enough and requires continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had the severe impairments of "right hand nerve damage, depression and post-traumatic stress disorder." (A.R. 11). The ALJ's failure to find additional severe impairments at Step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

The ALJ did not "minimize" the results of the March 12, 2009 examination, because the evidence was never presented to the ALJ before he entered his decision. The results of the examination were filed in June of 2009 in support of plaintiff's unsuccessful application for review by the Appeals Council. (A.R. 722-24). The court cannot consider evidence that was not presented to the ALJ in the process of determining whether the ALJ's decision is supported by substantial

---

[4]Sarcoidosis is "a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles (q.v.). It can affect almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1693 (31st ed. 2007).

evidence. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

Plaintiff's brief contains a request that the court remand this matter to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). The court can consider plaintiff's proposed new evidence in determining whether remand is appropriate. *See Foster v. Halter*, 279 F.3d at 357; *Cline*, 96 F.3d at 148. Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Ferguson v. Commissioner*, No. 09-4387, __ F.3d __, 2010 WL 5185848, at * 6 (6th Cir. Dec. 23 2010); *Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005).

The proffered record is not new because it predated the ALJ's decision. *See Ferguson*, 2010 WL 5185848, at * 6; *Cranfield v. Commissioner*, 79 F. App'x 852, 858 (6th Cir. 2003). Plaintiff has not addressed, much less carried her burden of demonstrating good cause for

failing to bring this record to the ALJ's attention. The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Secretary of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The ALJ held that plaintiff was not disabled from July 30, 2005 through April 1, 2009. The proffered evidence is not material because it would not have reasonably persuaded the Commissioner to reach a different conclusion. John W. Quick, M.D., examined plaintiff on March 12, 2009. (A.R. 722-23). He noted that plaintiff's pulmonary function test revealed "mild" fixed airway obstruction with normal lung volumes and mildly reduced diffusion capacity. (A.R. 722). He found that plaintiff was not in any acute respiratory distress. Plaintiff's oxygen saturation rate was 94%. A blood oxygen level of 94 % not classified as low. *See* http://www.mayoclinic.com/health/hypoxemia/MY00219 (last visited January 11, 2011) (Normal blood oxygen readings "range from 95 to 100 percent" and "values under 90 percent are considered low."). Dr. Quick found that plaintiff's neck was supple without adenopathy or jugular venous distention. Her chest was clear to auscultation with no adventitious sounds. Plaintiff had no cyanosis, clubbing, or edema. She had a full range of motion in all joints. (A.R. 722). This information would not have reasonably persuaded the ALJ to reach a different decision. I recommend that plaintiff's request for a remand pursuant to sentence six of 42 U.S.C. § 405(g) be denied.

**5.**

Plaintiff's brief concludes with this paragraph:

> The ALJ improperly determined that the Plaintiff's impairments do not meet Listings 12.04 or 12.06. Again, had he given even partial credibility to Plaintiff's testimony as well as the recent mental health history, she certainly would meet one or both of these Listings given her long-term treatment, her episodic periods of decompensation, and her significant restriction on activities of daily living. Likewise, the testimony of the vocational expert would be that there are no jobs available to an individual of the Plaintiff's history of significant mental illness. The ALJ improperly failed to give a hypothetical question to the vocational expert, which should have included the Plaintiff's significant mental limitations particularly regarding anger and concentration.

(Plf. Brief at 16), The above-quoted arguments are not supported by legal authority. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming that these issues had not been waived, they are meritless. It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. There is more than substantial evidence supporting the ALJ's findings that plaintiff did not meet or medically equal the requirements of listing 12.04 for affective disorders and listing 12.06 for anxiety-related disorders. (A.R. 12).

Plaintiff's argument attacking the adequacy of the hypothetical question is simply a reformulation of her arguments attacking the adequacy of the ALJ's factual findings regarding her

credibility and RFC. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Carrelli*, 390 F. App'x at 438; *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations he found to be credible.

## Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's request that this matter be remanded to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied. I further recommend that the Commissioner's decision be affirmed.


Dated:   January 12, 2011           /s/  Joseph G. Scoville
                                    United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General

objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).